**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIGHTVIEW LANDSCAPES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOHN ELLIS AND PACIFIC LANDSCAPE MANAGEMENT,<br><br>Defendants. | Civil Action No. ________________<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiff BrightView Landscapes, LLC (“BrightView"), by and through its attorneys, brings this Verified Complaint against Defendant John Ellis ("Ellis") and Defendant Pacific Landscape Management ("Pacific") and states as follows:

## PRELIMINARY STATEMENT

1. BrightView seeks to enforce contractual and statutory protections against a former long-tenured employee, John Ellis, who departed under false pretenses, joined BrightView's primary regional competitor, and took with him critical confidential, proprietary, and trade secret information.

2. Ellis accessed and downloaded BrightView’s confidential documents prior to his resignation on March 14, 2025, including sales strategies, targeted client accounts, business development onboarding plans, and his own offer letter that contains his Confidentiality and Nonsolicitation Agreement (the “Agreement”). A true and correct copy of which is attached hereto as Exhibit A.

3. Less than 40 days later, Ellis accepted employment with Pacific, BrightView's top competitor in the Pacific Northwest. He now holds a similar sales-focused role within the same geographic market.

4. BrightView has already lost a $250,000 client account and anticipates further harm, due to the inevitable use or disclosure of the confidential information Ellis accessed.

5. BrightView therefore seeks immediate and preliminary injunctive relief to prevent further irreparable harm to its competitive standing and customer relationships.

**PARTIES**

6. BrightView is a California corporation with its principal place of business in Pennsylvania and operates nationwide, including throughout Washington and Oregon.

7. Defendant John Ellis is a former employee of BrightView who, upon information and belief, resides at 4747 45th Avenue NE, Seattle, Washington 98105.

8. Defendant Pacific Landscape Management is a direct competitor of Brightview, with headquarters at 7997 NE Walker Rd, Hillsboro, Oregon, 97124.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) by virtue of the diversity of citizenship of the parties and the fact that the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

10. In addition, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because BrightView has asserted claims under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Brightview's state law claims because those state law claims arise out of the same operative facts as the federal claim.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and by agreement of the parties in the Confidentiality and Nonsolicitation Agreement, which designates Pennsylvania law and courts located in or serving Blue Bell, Pennsylvania.

**FACTUAL BACKGROUND**

12. Ellis was employed with BrightView from January 3, 2011, until March 14, 2025.

13. During his tenure, Ellis served in multiple sales leadership roles, including Business Developer and Market Sales Manager, with responsibilities spanning the Pacific Northwest.

14. On April 8, 2024, in exchanged for additional compensation and an enhanced role, Ellis executed a Confidentiality and Non-Solicitation Agreement (the "Agreement") which prohibits: a. Use or disclosure of confidential information (Section 3); b. Solicitation of BrightView customers for two years (Section 5); c. Retention of company records or documents post-termination (Section 4).

15. The Agreement defines "Confidential Information" broadly, including "sales information," "targeted accounts," "proposals," "marketing strategies," and "technical expertise" (Section 1(c)).

16. Ellis voluntarily resigned in March 2025, claiming burnout and stating that he had no immediate employment plans, intending to take time off to be with his family.

17. On or about April 21, 2025, Ellis commenced employment with Pacific as a Market Sales Manager, a direct competitor of BrightView.

18. Ellis did not disclose his intended employment during his resignation and misrepresented his plans to take time off

19. Following his departure, BrightView's internal scan of Ellis’s computer confirmed that Ellis downloaded sensitive files including:

a. Sales strategy document

b. Target account lists

c. Business Development onboarding materials

d. Event marketing document

e. His own offer letter containing the non-competition and non-solicitation agreement

20. These documents are not publicly available and contain highly proprietary strategic and operational data.

21. Since his departure, BrightView has experienced the loss of at least one key client (Trossachs HOA) and anticipates further losses due to Ellis's new role and use of its confidential information.

22. Ellis's employment with Pacific is in the same territory, serving the same types of customers, with an identical scope of responsibilities.

23. BrightView has learned that Ellis has attended industry events on Pacific's behalf and has been seen interacting with potential or former BrightView clients.

**AS AND FOR THE FIRST CAUSE OF ACTION:**
**BREACH OF CONTRACT (AGAINST ELLIS)**

24. Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

25. On or about April 8, 2024, BrightView and Defendant John Ellis entered into a written Confidentiality and Nonsolicitation Agreement, which governed the terms of his employment, post-employment conduct, and obligations concerning BrightView’s confidential information and customers.

26. The Agreement prohibits Ellis, inter alia, from:

- "[Using or disclosing] Confidential Information or Trade Secrets" during or after employment (Section 3);
- "[Soliciting or accepting business from] any Customer with whom team member had Material Business Contact in the Look Back Period" for a two-year period post-termination (Section 5);
- "[Retaining]... originals, copies, or other physical embodiments of BrightView's Confidential Information and Trade Secrets" after separation from employment (Section 4).

27. BrightView provided adequate consideration for Ellis's execution of the Agreement, including a salary increase and enhanced role, access to Confidential Information and Trade Secrets, and specialized training, as acknowledged in the recitals and in the opening clause: *"BrightView will expend a great deal of time, money, and effort to train team member in the Business and will disclose to team member its proprietary, Confidential, and Trade Secret Information... all of which... constitute valuable consideration."*

28. BrightView substantially performed all obligations under the Agreement, including employing Ellis for over a decade, providing compensation and specialized access to BrightView's clients, platforms, and strategies.

29. On or about March 14, 2025, Ellis voluntarily resigned from BrightView.

30. At that time, Ellis affirmatively misrepresented that he had no immediate employment plans and failed to disclose any intent to join a competing business.

31. Prior to his departure, Ellis accessed and downloaded BrightView's confidential and proprietary information, including: targeted client lists, sales strategy presentations, internal

business development onboarding materials, and his own executed offer letter containing the Agreement.

32. On or about April 21, 2025, Ellis accepted employment with Pacific Landscape Management, a direct competitor of BrightView, into a substantially similar role within the same geographic market and serving the same client base.

33. Subsequently, Ellis solicited the Trossachs HOA account.

34. Ellis thereby breached Section 5 of the Agreement by soliciting or accepting business from former BrightView customers with whom he had Material Business Contact, including the Trossachs HOA account, valued at approximately $250,000 annually.

35. Ellis further breached Section 3 of the Agreement by retaining and, upon information and belief, using or disclosing BrightView's Confidential Information in the course of his employment with Pacific.

36. Ellis breached Section 4 of the Agreement by failing to return BrightView materials upon his resignation and retaining confidential documents downloaded immediately before departure.

37. These breaches have caused and continue to cause BrightView irreparable harm, including the loss of client relationships, the undermining of goodwill, and the unfair competitive use of its internal strategy materials.

38. The Agreement specifically acknowledges that "[a] breach... will cause serious and irreparable injury to BrightView... which may not be adequately compensated by monetary damages alone," and entitles BrightView to injunctive and equitable relief (Section 12).

**AS AND FOR THE SECOND CAUSE OF ACTION**
**INEVITABLE DISCLOSURE OF BRIGHTVIEW'S CONFIDENTIAL**
**AND PROPRIETARY INFORMATION (AGAINST ELLIS)**

39. Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

40. BrightView operates in a highly competitive industry, including landscaping and snow/ice services, where customer relationships and proprietary business strategies are critical to success.

41. Ellis held a senior business development role and had access to BrightView's most sensitive and confidential sales strategies, pricing structures, targeted account plans, and client onboarding materials.

42. On or about March 14, 2025, Ellis voluntarily resigned and shortly thereafter accepted employment with Pacific Landscape Management, a direct competitor of BrightView, in a substantially similar role, serving the same geographic territory and customer base.

43. Ellis's new position makes it inevitable that he will rely upon, disclose, or otherwise use BrightView's confidential and proprietary information, whether intentionally or unintentionally, in violation of his obligations under the Agreement and applicable trade secret law.

44. Ellis's conduct prior to and after resignation—including downloading key documents and misrepresenting his future employment—demonstrates a clear risk that such disclosure will occur.

45. BrightView does not believe Pacific has taken any measures to safeguard Ellis from BrightView accounts or information, and in fact, he has already engaged with industry contacts and events in a competitive capacity.

46. As a result, BrightView will suffer irreparable harm, including the loss of client relationships, unfair competition, and further misuse of confidential information, unless injunctive relief is granted.

47. BrightView therefore respectfully requests that the Court enjoin Ellis from continued employment with Pacific, or at a minimum, from engaging in any activities that place him in direct competition with BrightView for a period not less than two years, consistent with the Agreement.

**AS AND FOR THE THIRD CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS (AGAINST ELLIS AND PACIFIC)**

48. Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

49. At all relevant times, BrightView had valid and enforceable contractual and business relationships with its customers, including but not limited to Trossachs HOA and other commercial and residential clients in the Pacific Northwest region.

50. BrightView also maintained a valid and enforceable Confidentiality and Nonsolicitation Agreement with Defendant John Ellis, which expressly prohibits him from soliciting BrightView's customers or using confidential information to compete for a period of two years following his employment (Agreement §§ 3, 5).

51. Ellis had material business contact with these customers during the two years prior to his resignation and possessed substantial confidential information regarding pricing, strategy, and account development.

52. Upon information and belief, shortly after his resignation and while employed by Defendant Pacific Landscape Management, a direct competitor of BrightView, Ellis began soliciting BrightView clients in violation of his contractual obligations.

53. Pacific either knew or should have known of Ellis's Agreement with BrightView, and upon information and belief, was made aware of the Agreement by Ellis himself, who retained a copy and downloaded it prior to his departure.

54. Despite this, Pacific employed Ellis in a similar capacity in the same market.

55. Pacific facilitated and benefited from Ellis's breaches by assigning him to accounts within the same territory and allowing, encouraging, or acquiescing to his solicitation of BrightView clients.

56. Ellis and Pacific's actions were intentional, knowing, and without justification. Their conduct was aimed at disrupting BrightView's existing client relationships and misappropriating its goodwill, client trust, and revenue.

57. As a direct and proximate result of Defendants' tortious interference, BrightView has suffered actual harm, including the loss of the Trossachs HOA account, diminished client confidence, and substantial financial damages.

58. BrightView is entitled to injunctive relief, compensatory damages, disgorgement of any profits unjustly obtained, and punitive damages due to the willful and malicious nature of Defendants' conduct.

**AS AND FOR THE FOURTH CAUSE OF ACTION:**
**<u>PENNSYLVANIA UNIFORM TRADE SECRETS ACT (AGAINST ELLIS AND PACIFIC)</u>**

59. Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

60. The Pennsylvania Uniform Trade Secrets Act ("PUTSA") prohibits any person from utilizing the trade secrets of another for that person's commercial advantage. The PUTSA, 12 P.S. § 5302, defines trade secrets to include:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, or process that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

61. BrightView has developed, at considerable time and expense, proprietary trade secrets, including detailed business development onboarding plans, sales strategies, targeted client lists, pricing models, and internal marketing and training materials, all of which derive independent economic value by not being generally known or readily ascertainable by competitors or the public.

62. BrightView has taken reasonable measures to maintain the secrecy of this information, including restricting access, password-protecting materials, marking information as confidential, and requiring employees—including Defendant Ellis—to sign confidentiality and nonsolicitation agreements. (Agreement §§ 1(c), 3, 4).

63. These materials qualify as trade secrets under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5302.

64. Upon information and belief, in the final days of his employment, Defendant Ellis accessed and downloaded these materials without any legitimate business purpose, including BrightView's business development onboarding plan, account strategies, "lunch and learn" agendas, and other competitively sensitive documents.

65. Defendant Ellis did not return these materials upon his resignation, in violation of his obligations under Section 4 of the Agreement.

66. Upon information and belief, he retained and used these materials to further his role at Pacific Landscape Management, a direct competitor.

67. Defendant Pacific Landscape Management either knew or had reason to know that Ellis had misappropriated BrightView's confidential and trade secret materials and nevertheless permitted or encouraged him to use them in support of Pacific's business development activities.

68. Ellis's conduct constitutes actual or threatened misappropriation of trade secrets under 12 Pa. C.S.A. § 5302 et seq.

69. As a direct and proximate result of Defendants' conduct, BrightView has suffered and will continue to suffer irreparable harm, including loss of customer relationships, loss of competitive advantage, loss of goodwill, and incalculable financial damages.

70. BrightView seeks injunctive relief restraining Ellis from further use or disclosure of its trade secrets and preventing his continued employment with Pacific or any other competitor for the duration of his restrictive covenant period.

71. BrightView also seeks all remedies available under PUTSA, including actual damages, unjust enrichment, attorneys' fees, and exemplary damages due to the willful and malicious nature of the misappropriation.

**AS AND FOR THE FIFTH CAUSE OF ACTION:**
**DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831, *et seq.* (AGAINST ELLIS AND PACIFIC)**

72. Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

73. The federal Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1832, *et seq.*

74. The DTSA broadly defines "trade secrets" to include "all forms and types of financial, business, scientific, technical, economic or engineering information" that derive independent economic value from not being generally known or readily accessible by the public using proper means and which the owner has taken reasonable steps to protect. 18 U.S.C. § 1839(3).

75. BrightView owns protectable trade secrets, including business development plans, client lists, pricing strategies, operational workflows, proposal templates, and internal training materials—all used in interstate commerce to serve clients nationwide.

76. BrightView took reasonable steps to protect the secrecy of this information by restricting access, implementing password protections, and requiring employees to enter into confidentiality and nonsolicitation agreements. (See Agreement §§ 1(c), 3, 4).

77. During the course of his employment, Ellis was given access to these trade secrets, including but not limited to a confidential business development onboarding plan, targeted sales strategy documents, lunch-and-learn agendas, and other competitive data.

78. In the weeks prior to his resignation, Ellis accessed, downloaded, and retained these trade secrets for purposes unrelated to his duties at BrightView and without authorization.

79. Upon information and belief, Ellis subsequently disclosed or used these trade secrets in connection with his new employment at Pacific Landscape Management, a direct competitor of BrightView.

80. Upon information and belief, Pacific was aware of Ellis's restrictive covenants and had reason to know that the materials Ellis brought with him were confidential and proprietary to BrightView, but nevertheless failed to take reasonable steps to prevent or limit the use of such information.

81. Ellis's conduct, and Pacific's willful encouragement or acquiescence in that conduct, constitutes misappropriation of trade secrets under the DTSA.

82. As a direct and proximate result, BrightView has suffered and continues to suffer irreparable harm, including loss of competitive advantage, damage to customer relationships, lost revenue opportunities, and diminished goodwill.

83. BrightView seeks all remedies available under the DTSA, including actual damages, exemplary damages due to the willful and malicious nature of Defendants' actions, injunctive relief, and reasonable attorneys' fees and costs.

84. BrightView also seeks a permanent injunction barring Ellis from continued employment with Pacific, or any other direct competitor of BrightView, for the duration of the two-year restrictive period set forth in the Agreement, as the only effective means to prevent further misuse of BrightView's trade secrets.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BrightView Landscapes, LLC, respectfully requests that this Court enter judgment in its favor and against Defendants John Ellis and Pacific Landscape Management, and grant the following relief:

A. Enter immediately a Temporary Restraining Order against Defendants providing as follows:

1. Enjoining Ellis from working for or providing services to Pacific Landscape Management or any other Competing Business, in

any capacity that would violate the restrictive covenants set forth in the Confidentiality and Nonsolicitation Agreement;

2. Enjoining Ellis and Pacific from soliciting, diverting, or accepting business from any BrightView customer with whom Ellis had Material Business Contact during the Look Back Period;

3. Enjoining Ellis from using, disclosing, retaining, or misappropriating any of BrightView's confidential, proprietary, or trade secret information;

4. Requiring Ellis to return and certify the destruction of all BrightView documents, data, and materials, whether in physical or electronic form.

B. Continue the Temporary Restraining Order in full force and effect through and including a hearing before this Court on Plaintiff's request for the entry of a Preliminary Injunction and set such a hearing at a date convenient for the Court.

C. Following the hearing on the request for a preliminary injunction, convert the Temporary Restraining Order into a Preliminary Injunction, to remain in effect until the merits of the parties' dispute are resolved at trial;

D. Enter an Order providing as follows:

1. Awarding BrightView compensatory damages in an amount to be determined at trial, including but not limited to lost revenue and profits from diverted business;

2. Awarding BrightView damages under the Pennsylvania Uniform Trade Secrets Act and the Defend Trade Secrets Act for misappropriation of trade secrets;

3. Awarding exemplary (punitive) damages under 18 U.S.C. § 1836(b)(3)(C) due to the willful and malicious nature of Defendants' conduct;

4. Awarding BrightView restitution or disgorgement of profits unjustly obtained by Defendants.

5. Awarding BrightView its reasonable attorneys' fees, costs, and expenses incurred in this action pursuant to the Agreement and applicable law, including 18 U.S.C. § 1836(b)(3)(D) and 12 Pa. C.S.A. § 5305.

6. Tolling of the restrictive covenant period under the Agreement for the duration of any period in which Ellis is found to be in breach;

7. Any other relief the Court deems appropriate.

E. Grant Plaintiff such other and further relief as the Court deems to be just and equitable under the circumstances.

Respectfully submitted,

**JACKSON LEWIS P.C.**

Dated: June 24, 2025

*/s/ Jonathan R. Cavalier*
Jonathan R. Cavalier (PA No. 206063)
Jason S. Kaner (PA No. 327891)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319-7802
F: (215) 399-2249
jonathan.cavalier@jacksonlewis.com
jason.kaner@jacksonlewis.com

*Attorneys for Plaintiff*

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the factual allegations set forth in the foregoing Verified Complaint are true and correct to the best of my personal knowledge. Executed on June 10, 2025.

Title: